IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAYENDRA BALDEVBHAI, | INDEX NO |
| PLAINTIFF, | ECF CASE |
| vs | COMPLAINT |
| THE CITY OF NEW YORK, a municipal entity, NEW YORK CITY POLICE OFFICER JEANMARC REMY, NEW YORK CITY POLICE OFFICERS "JOHN DOES" 1-4, | [JURY TRIAL DEMANDED] |
| DEFENDANTS. | |

Plaintiff JAYENDRA BALDEVBHAI, by his attorney, SAMUEL B. COHEN, complaining of the defendants, respectfully alleges as follows:

## I. PRELMINARY STATEMENT:

## THE CASE OF THE NON-COUNTERFEIT UMBRELLA

1.  Plaintiff JAYENDRA BALDEVBHAI bring this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

2.  Plaintiff JAYENDRA BALDEVBHAI is a manager of "Spring Mart," a delicatessen and convenience store located in the Nolita district of Manhattan. On May 20, 2015, New York City Police Officers, including but not limited to Defendant NEW YORK CITY POLICE OFFICER JEANMARC REMY, entered Spring Mart to conduct a warrantless inspection for counterfeit goods, and Defendant NEW YORK CITY POLICE OFFICER JEANMARC REMY and other unidentified officers placed Plaintiff JAYENDRA BALDEVBHAI under arrest for alleged Trademark Counterfeiting in the

Third Degree, NY PL §165.71, claiming that a black umbrella with red and gray tartan print sold at Spring Mart under the prominently-affixed label "CONCH UMBRELLAS AMERICA CORP." somehow counterfeited a trademark of the manufacturer Burberry.

3. While Defendants tendered an affidavit by a representative of Burberry affirming that Burberry held **a** trademark on May 20, 2015, that affidavit did not specify a particular trademark or allege its infringement by Plaintiff, or allege that Burberry was acting as complaining witness or had a representative inspect the umbrella in question. At the time of this incident, Burberry did not hold a trademark on a red and gray tartan print on a black background, and had not for approximately one year.

4. Additionally, under controlling precedent set out by the New York State Court of Appeals in 2010, probable cause for a lawful arrest under PL §165.71 can only be reached upon a showing of conduct evidencing knowledge of goods as counterfeit and intent to deceive or defraud others.

5. In sum, it was or should have been apparent to Defendants that probable cause did not exist to justify the arrest of Plaintiff JAYENDRA BALDEVBHAI for violation of PL §165.71.

6. Plaintiff JAYENDRA BALDEVBHAI was held against his will by police, and incurred expenses in retaining counsel to address this spurious charge, which was dismissed after three appearances before the criminal court.  He now brings this action in a quest for answers as to why Defendants levied a patently unsupported charge against him in the absence of probable cause, and continued a prosecution against him in defiance of evidentiary facts and controlling precedent dictating that he could not have been engaged in the offense charged on the facts alleged against him.

## II. JURISDICTION

7. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

8. Plaintiff JAYENDRA BALDEVBHAI further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

## III. VENUE

9. Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because the claims arose in this district.

## IV. JURY DEMAND

10. Per F.R.C.P. 38(b), Plaintiff demands a trial by jury of all issues in this matter.

## V. THE PARTIES

11. The Plaintiff JAYENDRA BALDEVBHAI is a resident of the City of New York, State of New York, and the County of Queens.

12. Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

13. Defendant THE CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New

York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

14. That at all times hereinafter mentioned, the Defendant NEW YORK CITY POLICE OFFICER JEANMARC REMY and NEW YORK CITY POLICE OFFICERS "JOHN DOES" 1-4 (Collectively, "Defendant Police Officers," individually, "Defendant Police Officer") were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

15. Each and all of the acts of the Defendant Police Officers alleged herein were done by said Defendants while acting within the scope of their employment by Defendant THE CITY OF NEW YORK, in furtherance of their employment by Defendant THE CITY OF NEW YORK.

## VI. FACTS COMMON TO ALL CLAIMS

16. At all times relevant herein, Plaintiff JAYENDRA BALDEVBHAI was and is a manager of "Spring Mart," a delicatessen and convenience store located on the corner of Spring Street and Mott Street in Manhattan.

17. Spring Mart, like many local convenience stores in New York City, offers prepared and packaged food and beverages, as well as grocery items and small necessities, to its customers.

18. Among these items offered for sale at Spring Mart are umbrellas of various descriptions.

19. On May 20, 2015, Spring Mart offered for sale, among other umbrellas, an umbrella sold under the prominently displayed manufacturer's mark "CONCH UMBRELLAS AMERICA CORP.," bearing a red and gray tartan design

20. One such umbrella, depicted here in its packaging as it was offered for sale at Spring Mart, is depicted in the photograph attached hereto as **Exhibit A**.

21. In the early afternoon of May 20, 2015, Defendant POLICE OFFICERS, including Defendant NEW YORK CITY POLICE OFFICER JEANMARC REMY, entered Spring Mart and began to inspect the items offered for sale.

22. The Defendant POLICE OFFICERS did not present a warrant.

23. On information and belief, the Defendant POLICE OFFICERS did not have a warrant to search Spring Mart.

24. On information and belief, the Defendant POLICE OFFICERS who searched Spring Mart without a warrant were members of the NYPD Street Crime Unit for Patrol Borough Manhattan South.

25. In the criminal complaint preferred against the Plaintiff, Defendant NEW YORK CITY POLICE OFFICER JEANMARC REMY states that he is assigned to the Patrol Borough Manhattan South Street Crime Unit.

26. The NYPD Street Crime Unit was an elite plainclothes unit of the NYPD that was disbanded in 2002 following criticism of their techniques in the wake of the 1999 shooting of Amadou Diallo by Street Crime Unit members.

27. On information and belief, the Street Crime Unit has been revived in South Manhattan by the NYPD.

28. After a lengthy inspection of Spring Mart, the Defendant POLICE OFFICERS placed Plaintiff JAYENDRA BALDEVBHAI under arrest.

29. Plaintiff JAYENDRA BALDEVBHAI was handcuffed in front of employees and customers of Spring Mart, causing embarrassment and damage to his reputation and the reputation of Spring Mart.

30. Plaintiff JAYENDRA BALDEVBHAI was taken to the NYPD 5th Precinct, where he was held for a period of hours.

31. That evening, Plaintiff JAYENDRA BALDEVBHAI was released from the NYPD 5th Precinct with a Desk Appearance Ticket commanding him to appear in court on June 30, 2015, to answer a charge of Trademark Counterfeiting in the Third Degree, under NY PL §165.71.

32. Plaintiff JAYENDRA BALDEVBHAI was forced to retain counsel in connection with this charge, and expended money in so retaining counsel.

33. On June 30, 2015, Plaintiff JAYENDRA BALDEVBHAI appeared in New York County Criminal Court with his Counsel.

34. On that date, when Plaintiff's case was called, Plaintiff's counsel pointed out the facial insufficiency of the criminal complaint against Plaintiff, and cited case law in support of same, causing the arraignment judge to rule that the complaint against Mr. Baldevbhai was facially insufficient.

35. The arraignment judge directed the District Attorney to file a superseding information by or before August 12, 2015.

36. Plaintiff JAYENDRA BALDEVBHAI appeared again in court on August 12, 2015, but no superseding information was filed on that date, and the case was adjourned to October 2, 2015.

37. On October 2, 2015, no superseding information was filed, and the District Attorney conceded that the prosecution was now untimely under CPL 30.30, and moved to dismiss. The Court granted the District Attorney's motion, and the charge against Plaintiff JAYENDRA BALDEVBHAI was dismissed and sealed at that time.

38. In the narrative component of the criminal complaint against Mr. Baldevbhai, Defendant NEW YORK CITY POLICE OFFICER JEANMARC REMY stated "I observed the defendant display and offer for sale one umbrella. I have examined the merchandise and, based on my training and experience, know the merchandise bears a counterfeit Burberry trademark. The counterfeit trademark appears the same as the genuine trademark except the item bearing the counterfeit trademark is different from items that the owner of the trademark produced. The item bearing a counterfeit trademark has inferior material, no care labels, hang tags, or packaging, while items bearing a genuine trademark have superior material, proper care labels, hang tags, and packaging. An affidavit signed by Harry Cheng, a representative of the trademark, states that the trademark is in use and registered."

39. This narrative, appearing above a legend stating "False staements made in this written instrument are punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law, and as other crimes[,]" contains two demonstrably false statements with respect to the umbrella that formed the alleged basis of Plaintiff's arrest.

40. First, as shown in Exhibit A, the umbrella in question is sold with a hang tag bearing the legend "CONCH[,] Product of Elite Corp.[,] Made in China[,]" on a blue background, along with a logo of a conch shell over waves, an American flag, and a Universal Product Code (UPC) barcode.

41. Second, as shown in Exhibit A, the umbrella in question is sold in packaging bearing the legends "CONCH UMBRELLAS AMERICA CORP." "Automatic King size" "100% POLYESTER MADE IN CHINA, as well as a logo of a conch shell over waves, which is marked as a registered trademark, and a UPC barcode.

42. Additionally, the affidavit of Harry Cheng referenced by Defendant NEW YORK CITY POLICE OFFICER JEANMARC REMY, attached hereto as Exhibit B, does not reference any particular trademark of Burberry, but simply affirms that Burberry possesses a trademark that is currently registered and in use.

43. Burberry does hold a registered trademark, USPTO serial no. 74532896, presently in use for umbrellas, in a distinctive and particular tartan pattern containing shades of light tan, dark tan, light brown and dark brown, that are claimed by Burberry as features of said mark.

44. By contrast, the umbrella at issue here bears a tartan pattern in gray, white and red on a black background, with no light tan, dark tan, light brown or dark brown elements.

45. According to the website of the Scottish Tartans Authority, over 7,000 unique tartan designs are documented in their International Tartan Index.[1]

46. Burberry does not hold trademarks on all tartan patterns.

47. Burberry did hold a trademark on a gray and red tartan pattern on a black background, USPTO serial no. 79104937, but that trademark was abandoned as of October 7, 2014- nearly a year before the incident at issue here.

---

[1] http://www.tartansauthority.com/tartan/tartan-today/

48. In sum, the umbrella forming the basis for the prosecution of Plaintiff JAYENDRA BALDEVBHAI bore considerable labeling identifying its manufacturer, not Burberry, and plainly did not infringe or reproduce any active trademark of Burberry.

49. PL §165.71 states in pertinent part that "[a] person is guilty of trademark counterfeiting in the third degree when, **with the intent to deceive or defraud some other person…** he or she manufactures, distributes, sells, or offers for sale goods which bear a counterfeit trademark…." (emphasis added).

50. The New York Court of Appeals has stressed the importance of the intent element of PL §165.71, explaining categorically that "trademark counterfeiting requires criminal intent[.]" *People v. Levy*, 15 NY3d 510, 517 (N.Y. 2010).

51. No indicia of criminal intent was alleged by Defendant NEW YORK CITY POLICE OFFICER JEANMARC REMY in the criminal complaint preferred against Plaintiff JAYENDRA BALDEVBHAI.

52. Indeed, no indicia of criminal intent could have been alleged by Defendant NEW YORK CITY POLICE OFFICER JEANMARC REMY in the criminal complaint preferred against Plaintiff JAYENDRA BALDEVBHAI, because the umbrella at issue was not a counterfeit, but a simple tartan umbrella bearing prominent non-Burberry makers' marks on its packaging and hang tag.

53. On information and belief, the Defendant POLICE OFFICERS who undertook Plaintiffs' arrest had received training and guidance from the NYPD with respect to the identification of counterfeit goods and the appropriate standards for charging individuals with trademark counterfeiting.

54. It has been shown in this instance, and numerous prior cases, that NYPD training with relation to trademark counterfeiting is inadequate and leads to numerous false arrests and prosecutions. *See, e.g., Wagner v. City of New York*, 2015 U.S. Dist. LEXIS 131204 (S.D.N.Y. September 28, 2015) (Caproni, J.) (*Monell* claim for failure to appropriately train trademark counterfeiting officers as to elements of trademark counterfeiting statute survives summary judgment); *People v. Jobe*, 20 Misc 3d 1114(A) (Kings County Crim Ct. 2008) (complaint dismissed for failure to allege actual trademarks counterfeited); *People v. R.S.*, 13 Misc. 3d 1213(A) (NY County Crim. Ct. 2006) (case dismissed for failure to identify genuine trademark and alleged imitation trademark).

55. On information and belief, the Defendant POLICE OFFICERS arrested the Plaintiff, at least in part, to meet some or all of their prescribed quantitative productivity goals for arrests.

56. As demonstrated by the recent coverage of the lawsuit brought by NYPD Officer Edwin Raymond, and of the recordings made by Officer Raymond in conversations with superior officers offered in support of same, prescribed quantitative arrest targets (quotas) remain a fact of life for NYPD officers under Commissioner Bratton.[2]

57. As a result of the foregoing, Plaintiff JAYENDRA BALDEVBHAI sustained, *inter alia,* mental injuries, emotional distress, embarrassment, legal expenses, humiliation and deprivation of his constitutional rights.

---

[2] Saki Knafo, "A Black Police Officer's Fight Against The N.Y.P.D.," New York Times Magazine, February 18, 2016, available online at http://www.nytimes.com/2016/02/21/magazine/a-black-police-officers-fight-against-the-nypd.html?_r=0

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

58.   Plaintiff JAYENDRA BALDEVBHAI incorporates the allegations above by reference.

59.   All of the aforementioned acts deprived Plaintiff JAYENDRA BALDEVBHAI of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

60.   The Defendant Police Officers and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

61.   As a result of the foregoing, Plaintiff's liberty was restricted for an extended period of time, he was put in fear for his safety and he was humiliated, without probable cause.

62.   As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

63.   As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

**SECOND CLAIM FOR RELIEF- FALSE ARREST UNDER 42 U.S.C. § 1983**

64. Plaintiff JAYENDRA BALDEVBHAI incorporates the allegations above by reference.

65. Plaintiff JAYENDRA BALDEVBHAI was taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

66. As a result of the foregoing, Plaintiff JAYENDRA BALDEVBHAI's liberties were restricted for an extended period of time.

67. As a result of the foregoing, Plaintiff JAYENDRA BALDEVBHAI was put in fear for his own safety, humiliated, and was forced to spend money to retain legal counsel, in the absence of probable cause.

68. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

**THIRD CLAIM FOR RELIEF-
MUNICIPAL LIABILITY UNDER *MONELL***

69. Plaintiff JAYENDRA BALDEVBHAI incorporates the allegations above by reference.

70. The following practices or customs of the New York City Police Department contributed to or caused the violations of Plaintiff JAYENDRA BALDEVBHAI's civil rights by Defendants:

   a. The continuing failure of the NYPD to provide adequate training and guidance to its officers with respect to trademark counterfeiting crimes, causing the NYPD to falsely arrest numerous individuals, including Plaintiff, for alleged trademark counterfeiting in the absence of probable cause;

      b. The continuing reliance of the NYPD on quantitative productivity goals in policing, or "quotas," which perversely incentivize NYPD officers to make arrests in the absence of probable cause to avoid adverse career consequences.

71. Upon information and belief, police officers in the New York City Police Department, including the Defendant POLICE OFFICERS, are trained, ordered or encouraged to meet quantitative enforcement "productivity goals" promulgated by policymakers and/or supervisory staff of Defendant CITY OF NEW YORK's police department.

72. Said quantitative enforcement "productivity goals" can also be referred to as arrest quotas.

73. The need to meet arrest quotas can induce police officers to make arrests in the absence of probable cause.

74. Upon information and belief, the arrest quotas promulgated by Defendant CITY OF NEW YORK induce New York City police officers, such as the Defendant Police Officers herein, to make arrests in the absence of probable cause, in violation of the constitutional rights of individuals to be free from unreasonable seizures.

75. The existence of the aforesaid unconstitutional arrest quota custom and/or policy was confirmed as a finding of fact when, on February 18, 2011, the jury in *Bryant v. City of New York*, Kings County Supreme Court Docket #022011/2007, found that the plaintiff in that case's arrest had resulted from a policy "regarding the number of arrests officers were to make that violated plaintiff's constitutional rights and contributed to her arrest" imposed by Defendant City of New York.

76. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the admission by Deputy Commissioner Paul J. Browne, as reported by the media on November 8, 2010, that commanders are permitted to set "productivity goals."[3]

77. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the posting of lists of quantitative targets for various forms of summonses at the 77th Precinct in Brooklyn. *See* fn3.

78. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the tapes recordings acquired by WABC-TV/DT, including, among other admissions, a 41st precinct sergeant explaining that each of his officers is held to a twenty summons per month and one arrest per month enforcement quota, as reported by the media on March 3, 2010.[4]

79. The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the tape recordings acquired by the Village Voice, including, among other admissions, an 81st precinct sergeant telling his officers to make "special" arrests as directed by their superiors even if they must void the arrests at the end of their shifts, as reported by the media on May 11, 2010.[5]

---

[3] Fanelli, James, "Cops At Brooklyn's Crime-Ridden 77th Precinct Told To Meet Quotas For Moving Violations, Memos Say," New York Daily News, November 8, 2010. Article incorporated by reference herein and available online at http://www.nydailynews.com/ny_local/2010/11/08/2010-11-08_cops_told_to_meet_quotas.html.

[4] Hoffer, Jim, "NYPD Officer Claims Pressure To Make Arrests," WABC News, March 3, 2010. Article incorporated by reference herein and available online at http://abclocal.go.com/wabc/story?section=news/investigators&id=7305356.

[5] Rayson, Graham, "The NYPD Tapes, Part 2: Bed-Stuy Street Cops Ordered: Turn This Place Into A Ghost Town." Village Voice, May 11, 2010. Article incorporated by

80.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the full page color advertisement placed by the Patrolmen's Benevolent Association of the City of New York in the May 7, 2012 edition of the New York Daily News, which states "Don't Blame the Cop[,] Blame NYPD Management For the pressure to write summonses and the pressure to convict motorists[.]  Because of ticket quotas, New York City police officers are being pressured to write summonses to as many motorists as possible…. "

81.     The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred to have continued to the present date from the opinion granting class certification in *Floyd v. The City of New York*, 08 Civ 1034 (SDNY May 16, 2012), in which the Honorable District Judge Shira A. Scheindlin noted the existence of a Police Officer Performance Objectives Operations Order dated October 17, 2011, in which "Commissioner Kelly directed all commands that 'Department managers **can** and **must** set performance goals,' relating to 'the issuance of summonses, the stopping and questioning of suspicious individuals, and the arrests of criminals.'"  Floyd Document 206 at 18-19, *citing* 10/17/11 Police Officer Performance Objectives Operations Order. (emphasis in original).

82.     As demonstrated by the recent coverage of the lawsuit brought by NYPD Officer Edwin Raymond, and of the recordings made by Officer Raymond in conversations with superior officers offered in support of same, prescribed quantitative arrest targets (quotas) remain a fact of life for NYPD officers under Commissioner Bratton.  See FN2, above.

---

reference herein and available online at http://www.villagevoice.com/2010-05-11/news/nypd-tapes-part-2-bed-stuy/.

83. The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department evince deliberate indifference to the safety, well-being, and constitutional rights of individuals such as Plaintiff JAYENDRA BALDEVBHAI.

84. As a result of the above constitutionally impermissible conduct, Plaintiff JAYENDRA BALDEVBHAI was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, legal expenses and damage to his reputation and standing within his community.

85. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

86. Plaintiff JAYENDRA BALDEVBHAI incorporates the allegations above by reference.

87. The Defendant POLICE OFFICERS, and Defendant CITY OF NEW YORK had an affirmative duty to intervene on Plaintiff JAYENDRA BALDEVBHAI's behalf to prevent the violation of his constitutional rights.

88. The individual Defendant Police Officers failed to intervene on Plaintiff JAYENDRA BALDEVBHAI's behalf to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

89. The individual Defendant Police Officers failed to intervene on Plaintiff JAYENDRA BALDEVBHAI 's behalf to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which the Plaintiff's

rights were violated by their affirmative conduct.

90. As a result of the aforementioned conduct of the individual Defendants, Plaintiff JAYENDRA BALDEVBHAI's constitutional rights were violated.

91. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

92. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FIFTH CLAIM FOR RELIEF
## MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

93. Plaintiff JAYENDRA BALDEVBHAI incorporates the allegations above by reference.

94. Defendants misrepresented and falsified evidence before the District Attorney.

95. Defendants did not make a complete and full statement of facts to the District Attorney.

96. Defendants were directly and actively involved in the initiation of criminal proceedings against Plaintiff JAYENDRA BALDEVBHAI.

97. Defendants lacked probable cause to initiate criminal proceedings against Plaintiff JAYENDRA BALDEVBHAI.

98. Defendants acted with malice in initiating criminal proceedings against Plaintiff JAYENDRA BALDEVBHAI.

99. Defendants were directly and actively involved in the continuation of criminal proceedings against Plaintiff JAYENDRA BALDEVBHAI.

100. Defendants lacked probable cause to continue criminal proceedings against Plaintiff JAYENDRA BALDEVBHAI.

101. Defendants acted with malice in continuing criminal proceedings against Plaintiff JAYENDRA BALDEVBHAI.

102. Defendants misrepresented and falsified evidence throughout all phases of the criminal proceeding.

103. Plaintiff JAYENDRA BALDEVBHAI was forced to spend money to retain counsel, and to appear in court on three (3) occasions to answer the false charge levied by Defendants.

104. Notwithstanding the malicious conduct of Defendants, the criminal proceedings against Plaintiff JAYENDRA BALDEVBHAI terminated in his favor on October 2, 2015, when the charge preferred against him was dismissed.

105. As a result of the above constitutionally impermissible conduct, Plaintiff JAYENDRA BALDEVBHAI was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

106. As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

    [a] Invoke pendent party and pendent claim jurisdiction.

    [b] Award appropriate compensatory and punitive damages.

    [c] Award appropriate declaratory and injunctive relief.

    [d] Empanel a jury.

    [e] Award attorney's fees and costs.

    [f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:    New York, New York
                February 25, 2016

                Respectfully submitted,

                _____~//s//~_____
                SAMUEL B. COHEN [SC 0622]
                494 8th Avenue Suite 1000
                New York, New York 10001
                [212] 537-5919
                Sam@SamCohenLaw.com
                ATTORNEY FOR PLAINTIFF